## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MILTON ROBINSON TELETOR COJOM,<br>    Plaintiff, | : | CIVIL CASE NO.<br>3:23-CV-1669 (JCH) |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ROBLEN, LLC. f/d/b/a VICOLO PIZZA | : | |
| RESTAURANT, VIKTOR BERISHA, | : | APRIL 9, 2025 |
|     Defendants. | : | |


**RULING ON MOTION FOR DEFAULT JUDGMENT (Doc. No. 20) MOTION FOR ATTORNEY'S FEES (Doc. No. 26), and MOTION TO WITHDRAW CERTAIN COUNTS (Doc. No. 33).**

### I.    INTRODUCTION

Plaintiff Milton Robinson Teletor Cojom ("Mr. Cojom") brings claims for minimum wage and overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-68 ("CMWA"), as well as other claims under Connecticut state law, against defendants Roblen, LLC, formerly doing business as Vicolo Pizza Restaurant ("Vicolo Pizza Restaurant") and it's owner, Viktor Berisha ("Mr. Berisha").  See Complaint ("Compl.") (Doc. No. 1). Mr. Cojom seeks back wages, overtime, liquidated damages, and prejudgment interest, as well as an award of attorneys' fees and costs.  See Compl.  On March 6, 2025, the court entered default against both defendants for their failure to appear.  See Order (Doc. No. 30).

Now before the court are Mr. Cojom's Motion for Default Judgment ("Pl.'s Mot.") (Doc. No. 20) and Motion for Attorney's Fees (Mot. For Attorney's Fees) (Doc. No. 26). Neither Motion is opposed.  For the reasons stated below, Mr. Cojom's Motion for

Default Judgment is granted in part, in the amount of $214,293.22, and Mr. Cojom's Motion for Attorneys' Fees is granted.

## II.    BACKGROUND[1]

Defendant Vicolo Pizza Restaurant was a restaurant located in New Canaan, Connecticut.  See Compl. at ¶ 7. The defendant, Mr. Berisha, was the sole owner and operator of Vicolo Pizza and managed its employees.  See id. at ¶¶ 10, 44.  The plaintiff, Mr. Cojom, was employed at Vicolo Pizza from approximately January 1, 2020 to June 1, 2022.  See id. at ¶ 17.  At various times throughout his employment, he served as a dishwasher, food preparer, a food runner, a busboy, and a restaurant cleaner.  See id. at ¶¶ 17, 35.  Mr. Cojom was also tasked with processing credit card and cash transactions for telephone and delivery orders.  See id. at ¶ 39.  Because Vicolo Pizza Restaurant was located only three miles from the border with the State of New York, Mr. Cojom's duties involved preparing and packaging food and drink orders for delivery in both Connecticut and New York.  See id. at ¶¶ 26, 41.

Throughout the course of Mr. Cojom's work at Vicolo Pizza Restaurant, he was required to work seven days a week for a total of 91 hours per week.  See id. at ¶ 46. He was paid five hundred dollars per week in cash by Mr. Berisha.  See id. at ¶ 47. Accordingly, Mr. Cojom was paid an average rate of pay of $5.49 per hour.  See id. at ¶ 48.  Mr. Berisha never paid Mr. Cojom overtime wages for the hours he worked each week beyond 40.  See id. at ¶ 49.  Mr. Cojom alleges that Mr. Berisha kept a "time stamp machine" in his personal office, but instructed Mr. Cojom and another Hispanic

---

[1] Because "a party's default is deemed to constitute a concession of all well pleaded allegations of liability", Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), the facts in this section are drawn from the well-pleaded allegations in Mr. Cojom's Complaint.

employee not to use it, and only placed it outside his office during inspections. See id. at ¶¶ 51, 52. Mr. Cojom also alleges that, "on a regular basis," Mr. Berisha would bang and throw kitchen objects at him with the intent of intimidating him, and would threaten to report him and other Hispanic employees to immigration authorities. See id. at ¶¶ 64, 65.

Mr. Cojom brought the present action on December 23, 2023. See Compl. His Complaint alleged ten counts. Counts One and Two are for violations of the wage and overtime provisions of the FLSA. See id. at ¶¶ 75-87. Counts Three and Four are for violations of the wage and overtime provisions of the CMWA. See id. at ¶¶ 88-102. The remaining Counts are for violations of the FLSA's recordkeeping and noticing regulations (Count Five), violations of the "meal break" provision of the CMWA (Count Six), workplace discrimination in violation of the CMWA (Count Seven), assault (Count Eight), intentional infliction of emotional distress (Count Nine), and negligent infliction of emotional distress (Count Ten).

Both defendants were served with the Summons and Complaint, see Certificate of Service (Doc. No. 9), and have failed to appear. On November 4, 2024, the clerk granted an entry of default. See Order (Doc. No. 19). On December 4, Mr. Cojom moved for a partial default judgment as to his "wage and hour claims" under the FLSA and CMWA.[2] See Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Pl.'s Mem.") (Doc. No. 20-3) at 4. The court held two hearings on the

---

[2] The court regards Mr. Cojom's Motion as unclear as to which Counts of the Complaint are considered "wage and hour" claims. The court construes this to mean Counts One through Four, Mr. Cojom's wage and overtime claims under the FLSA and CMWA. The court does not view Counts Five and Six, which pertain to the notice and recordkeeping provision of the FLSA, and the meal break provision of the CMWA, respectively, as "wage and hour" claims.

Motion, and Mr. Cojom testified at the second hearing as to his damages.  <u>See</u> Minute Entry (Doc. No. 29).  Mr. Cojom also filed a supplemental Motion for Attorney's Fees.  <u>See</u> Motion for Attorneys' Fees (Doc. No. 26).[3]

On March 24, 2025, after the evidentiary hearing, the court held a status conference by telephone and asked Mr. Cojom's counsel how he intended to dispose of the remaining Counts of his Complaint.  Plaintiff's counsel indicated that he would withdraw the remaining Counts of his Complaint and filed a Motion to Withdraw Counts Eight, Nine, and Ten of the Complaint on the same day.  <u>See</u> Motion to Withdraw (Doc. No. 33).

### LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedures establishes a two-step process for obtaining a default judgment.  <u>See</u> <u>New York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005).  First, after a party against whom relief is sought has failed to plead or otherwise defend, Rule 55(a) empowers the Clerk of the Court to enter a default against that party.  <u>Id.</u>; Fed. R. Civ. P. 55(a). A plaintiff may then apply to the court for a default judgment pursuant to Fed. R. Civ. P. 55(b).  <u>See</u> <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504 (2d Cir. 2011).

However, "a defendant's default does not in itself warrant a court in entering a default judgment."  <u>Amador v. Galbreath</u>, No. 10-CV-6702L, 2013 WL 1755784, at *2 (W.D.N.Y. Apr. 24, 2013) (quoting <u>Bianco v. Seaway Indus. Servs., Inc.</u>, No. 03-CV-0084E(F), 2004 WL 912916, at *1 (W.D.N.Y. Apr. 1, 2004)).  "While a party's default is

---

[3] Mr. Cojom seeks an award of attorneys' fees under both his Motion for Default Judgment and his Motion for Attorneys' Fees.  The court will discuss his request for attorneys' fees only pursuant to his Motion for Attorneys' Fees, which was filed later and contains more complete information.

deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (hereinafter "Bricklayers") (quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In determining whether to issue a default judgment, the court must ensure that the plaintiff's factual allegations establish liability as a matter of law. Bricklayers, 779 F.3d at 187 (citing Mickalis Pawn Shop, 645 F.3d at 137). In doing so, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) ("[F]actual allegations are taken as true in light of the general default judgment."); Greyhound Exhibitgroup, 973 F.2d at 158. "[D]amages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." Cement & Concrete Workers, 699 F.3d 230 at 234 (citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir.1989).

### III.    DISCUSSION

In his Motion for Default Judgment, Mr. Cojom seeks a default judgment on the his wage and hour claims under the FLSA and the CMWA only. See Pl.'s Mem. at 6. Mr. Cojom contends that he is entitled to back wages, including overtime, as well as

liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs.
See id. at 8-11.  The court first examines whether Mr. Cojom's allegations, deemed to
be true by the defendants' default, establish liability under the FLSA and CMWA.  The
court then addresses the amount of damages to which Mr. Cojom is entitled, and his
entitlement to attorneys' fees and costs.

### A.    Liability under the FLSA and CMWA

The FLSA generally requires employers to pay their employees the federal
minimum wage for every hour worked and to compensate employees for overtime, or
hours worked in excess of forty hours a week, at a rate of one and one-half times the
regular rate.  See Morales v. Gourmet Heaven, Inc., No. 3:14-CV-01333 (VLB), 2016
WL 8254353, at *3 (D. Conn. Nov. 29, 2016).[4]  To state a claim for unpaid minimum or
overtime wages under the FLSA, a plaintiff must allege that "(1) the plaintiff engaged in
commerce or is employed by an enterprise engaged in commerce; (2) the defendant[s]
employed the plaintiff; and (3) the plaintiff performed work for which he was not properly
compensated."  Id., citing Zhong v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 628
(S.D.N.Y. 2007).  Treating as true Mr. Cojom's allegations as to liability, the court finds
that each of these elements is satisfied.

The first element requires Mr. Cojom to establish that he is covered by the
minimum wage and overtime provisions of the FLSA, which require that he be either "(1)
engaged in the production of goods for commerce;" or that he be (2) "employed in an

---

[4] The court uses the word "generally" because the FLSA creates certain exemptions from the
general rule. However, "a claim of exemption under the FLSA is an affirmative defense," Darowski v.
Wojewoda, No. 3:15-CV-00803 (MPS), 2016 WL 4179840, at *10 (D. Conn. Aug. 7, 2016), and the
defendants have failed to plead, let alone plead any affirmative defenses.  As a result, the court applies
the default rule.

enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  Courts frequently referred to these two categories as "individual" and "enterprise" coverage, respectively.  See, e.g., Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009).  "Enterprise coverage" exists, inter alia, where an enterprise (i) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (ii) has "annual gross volume of sales made or business done ... not less than $500,000." 29 U.S.C. § 203(s)(1)(A).  In the present case, the court concludes that both elements of enterprise coverage are present.  Mr. Cojom alleges that Viccolo Pizza Restaurant regularly delivered pizzas across state lines, and had an annual gross volume of sales of well over $500,000 annually in pizza alone. See Compl. at ¶¶ 35, 42.  Thus, the court concludes that "enterprise coverage" exists, and the first element is satisfied.

Second, Mr. Cojom must show that he was "employed" by the defendants. Under the FLSA, an "employee" is "any individual employed by an employer," and an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §§ 203(d), (e)(1).  The Second Circuit examines the "economic reality" to determine whether an employment relationship exists, employing the following four-factor test:

> "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."

Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  The present case is not a close one.  Vicolo Pizza Restaurant, and its owner, Mr. Berisha, had the power to hire

and fire Mr. Cojom, supervise his work, and determine his pay.  See Compl. at ¶¶ 44-45, 76.  Importantly, the court reaches this conclusion with respect to both defendants and holds that Mr. Cojom was an "employee" of both Vicolo Pizza Restaurant and Mr. Berisha within the meaning of the FLSA.  The Second Circuit has held that an individual may be liable for damages as an "employer" under the FLSA when "the individual was engaged in the culpable company's affairs to a degree that it is logical to find him liable to plaintiff employees."  Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013).  Courts look to the individual's degree of "operational control" over a company as well the above four-factor test laid out in Carter to determine whether an individual is liable.  Id.  Here, Mr. Berisha ran Vicolo Pizza Restaurant as the sole/owner and operator and directly managed its employees, so the court finds that he is also an "employer" and is individually liable under the FLSA.  See Compl. at ¶¶ 44, 45.  The court concludes that both defendants satisfy the second element of FLSA liability.

Finally, Mr. Cojom must show that he "performed work for which he was not properly compensated."  Under the FLSA, at all times relevant to this case, the federal minimum wage has been $7.25 per hour.  See 29 U.S.C. § 206(a)(1)(C).  According to Mr. Cojom's Complaint, he was paid $500 per week, or, on average, $5.49 per hour.[5] See Compl. at ¶¶ 47, 48.  Thus, the court concludes that he performed work for which was not properly compensated, satisfying the third element of FLSA liability.

---

[5] Mr. Cojom's Complaint computes this average using an alleged 91-hour workweek, disregarding an overtime rate.  The court treats this allegation as true for the purposes of liability, see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  As discussed below, the court computes damages using an 80.5 hour workweek based on Mr. Cojom's testimony.  However, even computing the average based on an 80.5 hour workweek, Mr. Cojom was compensated at an average rate of $6.21 per hour, which is below the FLSA minimum rate of $7.25 per hour.  Thus, this element of liability is satisfied regardless of which weekly hourly total is used for the purposes of liability.

Accordingly, Mr. Cojom's allegations, taken as true, are sufficient to establish all three elements of liability under the FLSA.

The court reaches the same conclusion with respect to the CMWA. "The Connecticut Minimum Wage Act (CMWA) provides wage and overtime protections similar to the FLSA, except that it does not require the employee or enterprise to be engaged in interstate commerce." Gourmet Heaven, Inc., 2016 WL 8254353 at *5, citing Tapia v. Mateo, 96 F. Supp. 3d 1, 5 (D. Conn. 2015). Under the CMWA, the definition of an "employer" is "any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees." Conn. Gen. Stat. § 31-58. The Connecticut Supreme Court has declined to adopt the Second Circuit's "economic reality" test to determine whether an individual can be a liable as an "employer," but instead asks whether the individual "possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages." Butler v. Hartford Tech. Inst., Inc., 243 Conn. 454, 462 (1997). Under both this and the FLSA definition, both defendants are liable as "employers" of Mr. Cojom, because Mr. Berisha ran Vicolo Pizza Restaurant as the sole/owner and operator, and he set Mr. Cojom's work schedule and wages. See Compl. at ¶¶ 44, 45. The court likewise concludes that Mr. Cojom's rate of pay violated the CMWA.

Thus, under both the FLSA and the CMWA, the court concludes that Mr. Cojom's allegations, taken as true, are sufficient to establish liability for Mr. Cojom's wage and hour claims.

### B.    Damages under the FLSA and CMWA

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Bricklayers, 779 F.3d at 189.  Here, damages must be determined by the court and, to that end, the court held an evidentiary hearing in which it heard Mr. Cojom's testimony.

At the outset, the court must determine the applicable time period for which Mr. Cojom may recover damages.  In his Memorandum, Mr. Cojom alludes to the possibility that his recovery may be limited by the FLSA and CMWA's applicable statutes of limitations.  See Pl.'s Mem. at 10-11.  The FLSA statute of limitations is two years from the date the "cause of action accrues," unless the plaintiff can show that the "cause of action ar[ose] out of a willful violation," in which case the statue of limitations is three years.  See 29 U.S.C. § 255(a).  The CMWA's statute of limitations is two years, but without the exception for "willful" violations.  See Conn. Gen. Stat. § 52-596.  In his original memorandum, Mr. Cojom argues that the court should apply a three-year statute of limitations to his FLSA claims, because the violation was "willful."  See Pl.'s Mem. at 11.  Later, in a supplemental memorandum, Mr. Cojom argued that the court should apply the doctrine of equitable tolling, because Mr. Berisha did not post notices in the workplace informing Mr. Cojom of his rights.  See Supplemental Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Pl.'s Suppl. Mem.") (Doc. No. 25) at 11-12.  The court arrives at Mr. Cojom's desired result by a different road.

Other courts in this District have concluded that the defendants, by defaulting, waive their right to assert a defense based on an applicable statute-of-limitations.  The Second Circuit has held that "[a] claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the

complaint." <u>Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.</u>, 967 F.2d 742, 751–52 (2d Cir. 1992), <u>as amended</u> (Sept. 23, 1992). As such, courts in this District have held that the statute of limitations provisions of the FLSA and CMWA "are forfeited if not timely raised by the defendant." <u>Bi v. Xia</u>, No. 3:18-CV-23 (JAM), 2023 WL 4684828, at *8 (D. Conn. July 21, 2023); <u>see also</u> <u>Gourmet Heaven,</u> 2016 WL 6996976, at *7; <u>Hernandez v. Little K's Landscaping, LLC</u>, No. 3:23-CV-00460 (SVN), 2024 WL 1121321, at *9 (D. Conn. Feb. 5, 2024) (collecting cases). Because the defendants in the present case have failed to appear and plead, the court concludes that they have waived any statute of limitations defenses under the FLSA or CMWA. Accordingly, the court will calculate damages for the entire period in which Mr. Cojom was employed at Vicolo Pizza Restaurant.

Under both the FLSA and CMWA, Mr. Cojom seeks (1) back wages and overtime pay, (2) liquidated damages, (3) pre-judgment interest. His Motion for Attorneys' Fees also seeks (4) attorneys' fees and costs. <u>See</u> Pl.'s Mem. The court examines each of these requests in turn below.

1.    Back Wages and Overtime

Mr. Cojom seeks back wages for the entire time period working at Vicolo Pizza Restaurant, from January of 2020 to June of 2022.. In his in-person testimony, Mr. Cojom did not provide exact dates for his employment, so the court will use the dates in his affidavit, January 1, 2020, to June 1, 2022. <u>See</u> Affidavit of Milton Cojom Robinson Teletor ("Cojom Aff.") (Doc. No. 20-2) at ¶ 6.

In his testimony, Mr. Cojom stated that his rate of pay was $500 per week. In regards to the number of hours he worked each week, the court notes that there is some inconsistency between the affidavit Mr. Cojom filed, which claims 91 hours per

week, see Cojom Aff. at ¶ 7, and his oral testimony.  The court credits his oral testimony, in which Mr. Cojom testified that he worked from 10:30 AM and ending at 10 PM, seven days a week.  Thus, court finds that he worked 11.5 hours a day, for a total of 80.5 hours per week.

Because Mr. Cojom brings separate counts under both the FLSA and CMWA, the court will calculate damages separately under the two laws.  Because the damages are duplicative, however, the court will award the higher figure.

The federal minimum wage has been $7.25 per hour since 2009.  See 29 U.S.C. § 206(a)(1)(C).  The Connecticut state minimum wage under the CMWA was $12.00 per hour in 2020, rose to $13.00 per hour on August 1, 2021, and did not increase to $14.00 per hour until July 1, 2022.[6]  See Dept. of Labor, Minimum Wage Info, <https://www1.ctdol.state.ct.us/lmi/ctminimumwage.asp> (last visited March 28, 2025).

Under the FLSA, the federal minimum wage remained at $7.25 for the entire period of Mr. Cojom's employment.  Under the CMWA, however, it changed during the period. Based on the dates certain minimum wages went into effect in Connecticut, the time Mr. Cojom worked at Vicolo Pizza Restaurant can be divided into two periods.  The first is from January 1, 2020 to July 31, 2021, during which the Connecticut minimum wage was $12.00 per hour; the second is from August 1, 2021 to June 1, 2022, during which the minimum wage was $13.00 per hour.

---

[6] In his Supplement Memorandum, Mr. Cojom claims the $13.00 and $14.00 per hour rates for the entirety of 2021 and 2022, respectively, which appears to the court to be an error.  Those rates went into effect in the middle of the year.  See Hernandez v. Little K's Landscaping, LLC, No. 3:23-CV-00460 (SVN), 2024 WL 1121321, at *6 (D. Conn. Feb. 5, 2024) ("The state minimum wage was $12.00 per hour in 2020, rising to $13.00 on August 1, 2021, and $14.00 on July 1, 2022." (emphasis added)).

Both the FLSA and CMWA guarantee one and one-half times the hourly rate for overtime hours, defined as hours worked in excess of forty hours per week.  See 29 U.S.C. § 207(a)(1); Conn. Gen. Stat. § 31-76c.  Thus, having credited Mr. Cojom's testimony that he worked 80.5 hours per week, the court finds that he worked 40 hours plus 40.5 overtime hours per week.

Thus, under the FLSA (Counts One and Two), his damages for back wages and overtime are as follows:

| A. | B. | C. | D. | E. | F. | G | E. | F | Total |
|---|---|---|---|---|---|---|---|---|---|
| Time Period | Weeks in Period | FLSA Minimum Wage | Regular wages (C x 40 hours) | Overtime Rate (C x 1.5) | Overtime Wages (E x 40.5 hours). | Weekly Minimum Compensation (D+F) | Amount Actually Paid | Shortfall per Week (G – E) | Shortfall for Period (B x F) |
| Jan. 1, 2020 – June 1, 2022 | 126 | $7.25 | $290.00 | $10.875 | $440.4375 | $730.4375 | $500.00 | $230.4375 | **$29,035.13** |

Under the CMWA (Counts Three and Four), his damages for back wages and overtime are as follows:

| A. | B. | C. | D. | E. | F. | G | E. | F | Total |
|---|---|---|---|---|---|---|---|---|---|
| Time Period | Weeks in Period | CMWA Minimum Wage | Regular wages (C x 40 hours) | Overtime Rate (C x 1.5) | Overtime Wages (E x 40.5 hours). | Weekly Minimum Compensation (D+F) | Amount Actually Paid | Shortfall per Week (G – E) | Shortfall for Period (B x F) |
| Jan. 1, 2020 – July 31, 2021 | 83 | $12.00 | $480.00 | $18.00 | $729.00 | $1,209.00 | $500.00 | $709.00 | $58,847.00 |
| Aug. 1 2021 – June 1, 2022 | 43 | $13.00 | $520.00 | $19.50 | $789.75 | $1,309.75 | $500.00 | $809.75 | $34,819.25 |
| | | | | | | | | | **$93,666.25** |

Thus, under the FLSA, Mr. Cojom's back wages and overtime total **$29,035.13**. Under the CMWA, Mr. Cojom's back wages and overtime total **$93,666.25**.

2.    Liquidated Damages

Both the FLSA and CMWA have liquidated damages provisions that provide for double damages.  See 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a).  Neither statute makes such an award mandatory.  Under the FLSA, an employer may avoid an award of double damages if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith . . . ."  29 U.S.C. § 260.  The Second Circuit has said that the burden on the employer "is a difficult one, with double damages being the norm and single damages the exception."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  Likewise, under the CMWA, an employer may escape an award of double damages if "the employer had a good faith belief that the underpayment of such wages was in compliance with the law."  Conn. Gen. Stat. § 31-68(a)(2).  Where a defendant defaults, courts have deemed the defendant not to meet their burden to prove good faith under either statute.  See, e.g., Tapia v. Mateo, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) ("[a]s the Defendants have defaulted, they cannot make such a showing").

Because Vicolo Pizza Restaurant and Mr. Berisha have defaulted, they have not met their burden to prove good faith. As a result, Mr. Cojom is entitled to double damages under both statutes.  Accordingly, under the FLSA, he is entitled to twice $29,035.13, or **$58,070.26**.  Under the CMWA, he is entitled to twice $93,666.25, or **$187,332.50**.

3.    Prejudgment Interest

Mr. Cojom also seeks an award of prejudgment interest.  See Pl.'s Mem. at 10. In the Second Circuit, it is "well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988).  Thus, under the FLSA, the court makes no award of prejudgment interest.

However, the CMWA contains no such limitation, and courts in this District have awarded prejudgment interest in addition to liquidated damages under the CMWA.  See Wei v. Sichuan Pepper, Inc., No. 3:19-CV-00525 (JBA) (TOF), 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), report and recommendation adopted sub nom. Wei v. Sichuan Pepper, No. 3:19-CV-525 (JBA), 2022 WL 382019 (D. Conn. Feb. 7, 2022) (collecting cases).

Connecticut law permits a prejudgment interest rate of up to "ten per cent a year."  Conn. Gen. Stat. § 37-3a.  The primary purpose of section 37-3a "is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money."  Sosin v. Sosin, 300 Conn. 205, 230 (2011).  Thus, the trial court has discretion to determine the interest rate.  Courts should consider "all relevant information including evidence relative to the rate of interest available during the relevant period in determining the rate of interest to award." (cleaned up)  Weber v. FujiFilm Med. Sys. U.S.A., Inc., 933 F. Supp. 2d 285, 304 (D. Conn. 2013), judgment corrected, No. 3:10CV401 JBA, 2013 WL 6592592 (D. Conn. Dec. 16, 2013), and aff'd in part, rev'd in part and remanded on other grounds sub nom. Weber v. Tada, 589 F. App'x 563 (2d Cir. 2014).  In Weber, for example, the court awarded pre-judgment interest at an annual rate of four percent "[i]n consideration

15

of the economic context," including that the S&P 500 grew at an average annual rate of 4.24 [percent] during that period." Id.

The court follows a similar approach here. In a recent decision, this court calculated prejudgment interest awarded under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., by referring to the yield rates for 1-year Treasury bonds, rates which are alluded to in section 1961 of Title 28 of the United States Code.[7] See Ramadei v. Radiall USA, Inc., No. 3:21-CV-01435 (JCH), 2024 WL 4198326, at *2 (D. Conn. Sept. 16, 2024); see also 28 U.S.C. § 1961. In Ramadei, this court used rate data derived from the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, to estimate a annual yield rate for each 1-year period in which prejudgment interest accrued. See Ramadei, 2024 WL 4198326 at *2. The Federal Reserve determines the weekly Treasury rate each Friday by calculating the average of the daily Treasury rate, published each business day of the week. See Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Quoted on an Investment Basis, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/WGS1YR (explaining that weekly rate averages are calculated each Friday). These rates provide a dataset that allows the court to determine an average rate for each annual period between a particular starting date and the date of judgment. See Ramadei, 2024 WL 4198326, at *2.

Under this method, the court must determine a starting date at which prejudgment interest begins to accrue. The court finds persuasive the approach courts

---

[7] The award in Ramadei was, as here, for lost wages.

have taken in several other wage and hour cases in this District, which is to calculate interest from the midpoint of a plaintiff's employment.  Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15CV10186 (ER) (DF), 2021 WL 3375615, at *19 (S.D.N.Y. May 17, 2021), report and recommendation adopted sub nom. Wen v. Hair Party 24 Hours Inc., No. 15CIV10186ERDCF, 2021 WL 2767152 (S.D.N.Y. July 2, 2021);  see also Sichuan Pepper, 2022 WL 382019 at *14.  (This approach "avoids having to perform a separate interest calculation for each week in which wages were wrongfully withheld").  Because his employment at Vicolo Pizza Restaurant lasted from January 1, 2020 to June 1, 2022, the court determines the midpoint to be March 17, 2021.

Thus, the court considers prejudgment interest from March 17, 2021, to the date of this Ruling, using the approach in Ramadei.  Using the average 1-year constant maturity Treasury yield rate, the court calculates an average rate of .25% for the period from March 17, 2021, to March 17, 2022, an average rate of 3.6% from March 17, 2022, to March 17, 2023, an average rate of 5.08% from March 17, 2023, to March 17, 2024, an average rate of 4.55% from March 17, 2024, to March 17, 2025, and from March 17, 2025, to the date of this Ruling, an average of 4.05%.  See Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Quoted on an Investment Basis, Federal Reserve Bank of St. Loius, https://fred.stlouisfed.org/series/WGS1YR.

Using the above average rates as annual interest rates for each respective year, the court calculates interest under the CMWA as follows:

| A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|
| Period | Rate (%) | Length of Period | Damage Award (Back wages + Liquidated Damages) | Interest Accrued During Period | Cumulative Damages |
| | | | $187,332.50. | | $187,332.50. |
| March 17, 2021 – March 17, 2022 | 0.25% | 1 Year | | $468.33 | $187,800.83 |
| March 17, 2022 – March 17, 2023 | 3.6% | 1 Year | | $6,760.83 | $194,561.66 |
| March 17, 2023 – March 17, 2024 | 5.08% | 1 Year | | $9,883.73 | $204,445.39 |
| March 17, 2024 – March 17, 2025 | 4.55% | 1 Year | | $9,302.27 | $213,747.66 |
| March 17, 2025 – April 9, 2025 | 4.05% | 23 Days | | $545.56  ($23.72 per diem) | $214,293.22 |

Thus, the court calculates prejudgment interest of $26,960.72 (the sum of column E).  Added to Mr. Cojom's double damages under the CMWA, the total is **$214,293.22.**

Thus, including prejudgment interest, the court would award damages of **$58,070.26** under the FLSA (Counts One and Two), and **$214,293.22** under the CMWA (Counts Three and Four).  Because these damages are duplicative of one another, the court awards **$214,293.22** in damages.  Thus, Mr. Cojom's partial Motion for Default Judgment on his wage and hour claims is granted in part, and the court awards **$214,293.22** in damages.

4. Attorney's Fees and Costs

Mr. Cojom also moves for an award of $12,600 in attorneys' fees, and $758 in costs.  See Mot. For Attorneys' Fees (Doc. No. 26).  Under both the FLSA and CMWA, prevailing plaintiffs can recover "reasonable" attorneys' fees.  See 29 U.S.C. § 216(b);

Conn. Gen. Stat. §§ 31-68, 31-72.  Under the FLSA, an award of reasonable attorneys' fees is mandatory.  29 U.S.C. § 216(b) ("The court . . . <u>shall</u> . . . allow a reasonable attorney's fee . . . . ") (emphasis added).

Courts in this District have found rates between $300 per hour and $400 per hours reasonable for partner-level work on an FLSA case.  <u>See</u> <u>Aboah v. Fairfield Healthcare Servs., Inc.</u>, No. 3:20-CV-00763 (SVN), 2023 WL 8807362, at *3 (D. Conn. Dec. 20, 2023) (reducing a requested rate to $400 per hour); <u>see also</u> <u>Tapia v. Mateo,</u> 96 F. Supp. 3d 1, 6 (D. Conn. 2015) (approving $300 hourly rate for "an experienced litigator in . . . wage and hour cases").  Thus, the court concludes that Attorney Rapice's requested rate of $350 per hour is reasonable.  Having reviewed the itemized list of Attorney Rapice's hourly billings, <u>see</u> Doc. 26-1, the court concludes that 36 hours is reasonable as well.  Thus, the court grants Mr. Cojom's request for $12,600 in attorneys' fees.  Finally, Mr. Cojom seeks an award of $758 in costs, which covers the costs of this court's filing fee, service of process, and procurement of a military affidavit. <u>See</u> <u>id.</u>  The court likewise considers this reasonable and awards Mr. Cojom $758 in costs.

Thus, Mr. Cojom's Motion for Attorneys Fees is granted.

### C.    Remaining Claims

Mr. Cojom moved for default judgment on his wage and hour claims only.  <u>See</u> Pl.'s Mem.  During a March 24, 2025 status conference, the court expressed its desire not to enter a partial judgment and asked Mr. Cojom's counsel how he wished to proceed on the remaining claims.  Counsel for the plaintiff indicated his intent to withdraw Mr. Cojom's remaining claims.  He then filed a Motion to Withdraw Counts Eight through Ten of his Amended Complaint.  <u>See</u> Motion to Withdraw Certain Counts

(Doc. 33). The Motion to Withdraw is granted, and Counts Eight through Ten of Mr. Cojom's Complaint are dismissed without prejudice.

The remaining Counts of his Complaint are Count Five, which alleges violations of the notice and recordkeeping provisions of the FLSA, Count Six, which alleges violations of the "meal break" provision of the CMWA, Conn. Gen. Stat. § 31-51ii, and Count Seven, which alleges workplace discrimination in violation of the CMWA. The court does not consider these claims to be "wage and hour" claims within the meaning of the plaintiffs' Motion. Further, there was little to no evidence adduced at the hearing to support awarding damages under these claims. Because the court does not understand the plaintiff to have moved for default judgment on these claims, and because counsel orally indicated his intention to withdraw all remaining claims, the court dismisses Counts Five, Six, and Seven without prejudice for failure to prosecute.

## IV.    CONCLUSION

For the reasons provided herein, the court grants the government's Motion for Default Judgment (Doc. No. 20) in part. The court enters judgment on Counts One and Two in the amount of $58,070.26. The court enters judgment on Counts Three and Four in the amount of $214,293.22. Because these damages are duplicative, the court enters judgment in the amount of $214,293.22 in damages.

The Court grants the Mr. Cojom's Motion for Attorneys' Fees (Doc. No. 26), and awards $12,600 in attorneys' fees and $758 in costs.

Mr. Cojom's Motion to Withdraw Certain Claims (Doc. No. 33) is granted, and Counts Eight through Ten of the Complaint are dismissed without prejudice.

The court dismisses Counts Five through Seven of the Complaint without prejudice for failure to prosecute.

The Clerk is ordered to enter judgment for the plaintiff in the amount of $214,293.22, $12,600 in attorneys' fees, and $758 in costs, and close the case.


SO ORDERED.

Dated at New Haven, Connecticut this 9th day of April 2025.


\_\_\_\_/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge