UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MILTON ROBINSON TELETOR COJOM,<br>    Plaintiff, | : | CIVIL CASE NO.<br>3:23-CV-1669 (JCH) |
| v. | : | |
| ROBLEN, LLC. f/d/b/a VICOLO PIZZA RESTAURANT, and VIKTOR BERISHA,<br>    Defendants. | : | NOVEMBER 17, 2025 |

**SANCTIONS ORDER**

**I.     INTRODUCTION**

In the instant action, plaintiff's counsel David P. Stich submitted a Memorandum in Opposition to Defendant's Motion to Set Aside Default (Doc. No. 46) ("Opposition Brief") containing multiple fabricated citations to legal authority resulting from the use of Descrybe.AI, an artificial intelligence based legal research tool.  See Declaration of David P. Stich, Esq. In Response to Court's Order to Show Cause ("Stich's Response") (Doc. No. 52).  In doing so, Attorney Stich abdicated his responsibilities under Rule 11 of the Federal Rules of Civil Procedure.   The court must now consider what sanctions are proper for an attorney who submits a pleading containing "hallucinated," i.e., fake, citations to the court in violation of Federal Rule of Civil Procedure 11.

**II.     FACTUAL & PROCEDURAL BACKGROUND**

The court assumes familiarity with the general factual background of the instant action, focusing instead only on the events pertinent to the papers containing fabricated citations.  Plaintiff commenced this action on December 23, 2023, alleging, inter alia, that defendant, in his capacity as owner and operator of a pizza restaurant, willfully failed to pay minimum wage and overtime to the plaintiff in violation of the Fair Labor

1

Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-68 ("CMWA").  See Complaint ("Compl.") (Doc. No. 1).  The defendant was served with the Summons and Complaint on January 8, 2024, but thereafter did not appear, answer, or otherwise defend against the lawsuit, culminating in a Default Judgment entered on April 11, 2025.  See Certificate of Service (Doc. No. 9); Default Judgment (Doc. No. 36).

Defendant thereafter moved for vacatur.  See Motion to Set Aside Default Judgment. (Doc. No. 39).  Plaintiff opposed the Motion to Set Aside Default Judgment, submitting the Memorandum at issue in this Order.  In preparing its Ruling on the Motion to Vacate, the court identified certain citations to legal authorities in the plaintiff's Opposition Brief that were nonexistent.  Upon suspicion that the defective citations were the product of artificial intelligence ("AI"), the court issued an Order to Show Cause addressed to Attorney Stich.  See Order to Show Cause (Doc. No. 49).  In that Order to Show Cause, the court identified three cases, purportedly from this District, which the court could not locate despite its best efforts.  Id.  A Show Cause Hearing was set for September 9, 2025.[1]  Id.

On July 28, 2025, Attorney Stich filed a Declaration in response to the Order, admitting to the use of an AI tool in generating the defective citations.  See Stich's

---

[1] The court is aware that, in a separate proceeding in this District before Judge Stefan R. Underhill, Davila v. Roblen, LLC et al., 3:23-cv-00512-SRU, Attorney Stich is also subject to another Order to Show Cause for filing a brief containing AI generated, nonexistent legal authority.  See 3:23-cv-00512-SRU, Order to Show Cause (Doc. No. 81).  In his Affidavit in response to the Order, Attorney Stich admitted to use of the same tool at issue in this action, Descrybe.AI.  See 3:23-cv-00512-SRU Declaration of David P. Stich, Esq. In Response to Court's Order to Show Cause (Doc. No. 83) at ¶ 3.

A Show Cause Hearing has been scheduled in that case for October 28, 2025.  See 3:23-cv-00512-SRU Notice of E-Filed Calendar (Doc. No. 82).  That brief was filed on the same day as the brief at issue in the instant matter.

2

Response (Doc. No. 52).  Stich expressed "sincere and unreserved apology" for the nonexistent citations and explained that it was his first use of an AI tool.  Id. at ¶ 1.  Stitch stated that, in using the AI tool, he recognized certain cases it referenced from his prior exposure to vacatur motions and that this familiarity provided "a false sense of confidence in the AI tool's accuracy."  Id. at  ¶ 5.  He assumed that the remaining citations and legal authorities were also valid and admitted that such "assumption was mistaken and deeply flawed."  Id.  Attorney Stich explained that he is "committed to ensuring that this type of error does not recur and to maintaining the highest standards of accuracy, candor, and professionalism in [his] future conduct before this Court and all others."  Id. at 7.

At the Show Cause Hearing on September 9, 2025,  Attorney Stich evinced similar contrition and acknowledgment of responsibility.  He explained that he learned of the tool from his daughter, herself a practicing lawyer of 10 years.  His daughter told Attorney Stich that the tool "works great" and is touted as uniquely effective for legal practitioners.  While Descrybe.AI has both free and paid functionalities, Attorney Stich had purchased a license for the tool, which he has since canceled.  As a result of the hallucinated citations in both this matter and in the separate proceeding before Judge Underhill, see supra n.1, Attorney Stitch stated he would cease all use of artificial intelligence in his legal practice.  While Attorney Stitch is presently a solo practitioner, he explained that he will ensure no one in his employ in the future will use AI.  Moreover, in the intervening time since these hallucinated citations were first identified, Attorney Stich has undergone CLE coursework on the subject of AI technology and its

3

risks. He offered no excuse for his failure to check the citations and stated this foray into AI generated legal authority is his first and will be his last.

### III.    LEGAL STANDARD

Rule 11(b)(2) states:

> "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ."

The filing of papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" that is subject to Rule 11 sanction. Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 398 (1990). Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers." Id. "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" AJ Energy LLC v. Woori Bank, 829 Fed. App'x 533, 535 (2d Cir. 2020) (summary order) (quoting Gutierrez v. Fox, 141 F.3d 425, 427 (2d Cir. 1998)).

### IV.    DISCUSSION

Artificial intelligence is a rapidly developing technology that continues to permeate more and more facets of everyday life. The court understands that, in issuing this Order, it does so in a proverbial new frontier as society begins to grapple with both the power and potential danger of this technology. Indeed, state and federal courts around the country have begun confronting the phenomenon of so-called "hallucinated" citations in court papers—that is, citations to legal authority that are either partly or wholly nonexistent. See, e.g., Sanctions Order, Johnson v. Dunn, No. 2:21-CV-1701-

4

AMM, 2025 WL 2086116 (N.D. Ala. July 23, 2025) (Doc. No. 204); Opinion and Order on Sanctions, Mata v. Avianca, Inc., 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (Doc. No. 54); Kruse v. Karlen, 692 S.W.3d 43, 52, 54 (Mo. Ct. App. 2024); Findings, Rulings and Order Imposing Sanctions, Smith v. Farwell, No. 2282CV01197, 2024 WL 4002576 (Mass. Super. Feb. 15, 2024).  See also, Park v. Kim, 91 F.4th 610, 615-16 (2d Cir. 2024) (referring counsel to court's disciplinary committee for investigation for citation to a non-existent case in reply brief).

The presence of AI hallucinated citations in court papers is troublesome for obvious reasons.  As Judge Castel stated in his Sanction Order in Mata:

> "Many harms flow from the submission of fake opinions. . . The Court's time is taken from other important endeavors.  The client may be deprived of arguments based on authentic judicial precedents.  There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct.  It promotes cynicism about the legal profession and the American judicial system.  And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."

678 F. Supp. 3d at 448-49.  These concerns are distinctly felt here as Attorney Stich was representing, in his own words, "a young, scared, and vulnerable immigrant worker" against a defaulted, pro se defendant.  Opposition Brief at 12.  Attorney Stich's client was deprived of arguments based on legitimate judicial precedent and his pro se opponent was forced to contend with arguments based on phony law without the benefit of legal representation.  The danger of Attorney Stich's AI use is especially felt here because his opponent's pro se status meant that there was not an adversary capable of calling the attention of the court to the phony citations.  Furthermore, this court expended time and resources in investigating the hallucinated citations, resources that could have been better spent adjudicating the merits of this underlying litigation and that

5

of other cases pending before this court.  The oversight in submitting fake citations is more than just sloppy lawyering: it imperils the integrity of our judicial process.

However, the court also acknowledges that our society sits on the precipice of rapid technological development and that the continued development of AI will fundamentally alter life as we know it.  Just as the advent of the Internet in the late 20th century transformed the legal profession, and particularly legal research, so too will artificial intelligence.  Indeed, the two biggest legal research databases, Westlaw and LexisNexis, have developed and continue to expand their own proprietary AI tools to assist legal practitioners in finding case law.[2]  This Order should not be construed as a Luddite attack on technology and the efficiency it brings to the legal profession.  Rather, this Order is an acknowledgement that AI remains a nascent technology with questionable reliability at this juncture.  Given the ethical obligations lawyers must honor, it is imperative that lawyers use AI with diligence and care.  This technology is too unsophisticated and must necessarily yield to a lawyer's obligation of candor to the court.

---

[2] "Likewise, AI platforms can be used for predictive analytics further enhances AI's capabilities, enabling lawyers to foresee case outcomes, potential settlement ranges, and the likelihood of success on a given motion based on historical data.  Large law firms have turned to AI companies to automate drafting and research. For instance, thousands of lawyers worldwide are now using Harvey, a GPT-4 platform backed by OpenAI, to save time and money. **Not to be left behind, Lexis and Westlaw joined the AI race, creating their own generative AI platforms**." Benjamin R. Syroka, You Just Can't Beat the Machine: A Lawyer's Duty to Adapt in the Age of Artificial Intelligence, 56 U. TOL. L. REV. 315, 321–22 (2025) (emphasis added).

"In the 21st century, the Thomson Reuters (Westlaw) and RELX (LexisNexis) 'duopoly' is no longer only about legal research… The most valuable assets these companies have are data.  Both companies have created new data-driven law practice technology tools and incorporated those tools into their research platforms. **The newest versions of these platforms include AI-assisted document review and analysis features, data analytics tools, and public records databases**."  Julie L. Kimbrough, Developing Lawyering Skills in the Age of Artificial Intelligence: A Framework for Legal Education, 29 J. TECH. L. & POL'Y 31, 44 (2025) (emphasis added).

In failing to check the citations the Descrybe.AI created, Attorney Stich did not conduct a reasonable inquiry into his pleading as required under Rule 11. In his own words, Attorney Stich stated that he is "really good at doing Lexis research." Yet, Attorney Stitch conducted not even a cursory cite check of fake citations to legal authority attributed to this District before presenting them to this court. The court finds itself in a unique landscape with its need to sanction conduct which, if left unchecked, poses serious risk to the integrity of the judicial system.

In determining what sanction is most appropriate for Attorney Stich, the court is mindful that Attorney Stich has (i) canceled his license to the AI research tool; (ii) resolved to never use AI in his legal practice again; (iii) promised that no lawyer in his employ will use AI again; and (iv) completed CLE programming related to AI in the legal profession. Balancing the seriousness of the conduct with Attorney Stich's instant acknowledgement of his error, his recognition of the seriousness of his misconduct, the steps Attorney Stich has taken to prevent future error, and his clean record, the court determines that the most appropriate sanction is $500.

### V.     CONCLUSION

For the reasons discussed above, the court orders a monetary sanction in the amount of $500.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 17th day of November 2025.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge